UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY


**SETH GROSSMAN**
Attorney at Law
Attorney ID#: 013331975
453 Shore Road
Somers Point, NJ 08244
Tel. 609-927-7333
Attorney for Creditor Robert Cohen

---

|  |  |
|---|---|
| In Re: | Case No.:14-28675-ABA |
| MELISSA RADCLIFF | Chapter: 13 |
| Debtor: | Hearing Dated: December ___, 2015<br>Judge: Andrew B. Altenburg, Jr. |

<u>**CERTIFICATION IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**</u>


I, ROBERT D COHEN, declare under penalty of perjury as follows:

1. I am the owner and landlord of the Premises at 7218 Belmont Avenue, in Mays Landing, Atlantic County, New Jersey, (hereinafter referred to as "The Premises") where Debtor MELISSA RADCLIFF resides and I certify that each of the facts set forth in this certification are true and correct to the best of my knowledge.

2. On or about June 1, 2012, I entered into a written lease with Debtor. Under the terms of that lease Debtor was permitted to occupy the Premises as long as she paid rent of $1,000 due and payable on the 25th day of each month. A true copy of that lease is attached hereto as Attachment A.

4

3. On or about June of 2013, I and Debtor entered into an oral modification of the original lease, and we agreed that Debtor could occupy the premises under the same terms as the original lease except that the term of the lease would be month to month, and the amount of rent due would be $1,100 due and payable on the 25th day of each month.

3. At the time Debtor filed her bankruptcy petition in this matter on 9/11/2014, Debtor owed me $2,200 of rent for July and August, $150 of additional rent for late charges for those two months, together with $56 in court costs, for a total of $2,406.

4. Since Debtor filed her bankruptcy petition in this matter, she owed me another $1,100 due September 25, 2014, another $1,100 on October 25,3014, and another $1,100 to become due on November 25, 2014.

5. I have not received a rent payment from Debtor since July 9, 2014, when Debtor paid me the $1,100 rent due on May 25, 2014, together with an additional $100 on account of additional rent previously due for late charges.

6. Until November 25, 2014, Debtor owes me $2,406.  In addition, another $1,100 will become due on November 25, 2014.

Pursuant to 28 U.S.C. Sec. 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21 day of November, 2014

_____
ROBERT D. COHEN


Sg/bank14-cohen-landlord-stay-relief

*ATTACHMENT A*

M889-House lease, plain language, 5-86                                      © 1984 Julius Blumberg, Inc., Publisher, NYC 10013

THIS IS A LEGALLY BINDING LEASE THAT WILL BECOME FINAL WITHIN THREE BUSINESS
DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN
REVIEW AND CANCEL THE LEASE. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.*

# HOUSE LEASE

The Landlord and the Tenant agree to lease the House for the Term and at the Rent stated, as follows:
The words Landlord and Tenant include all landlords and all tenants under this Lease.

Landlord: ROBERT COHEN          Tenant MELISSA RADCLIFFE
(Print or type)                 (Print or type names of all adult Tenants who will live in the Apartment. Each must sign this Lease.)
                                William A. Johnson Jr.
(Address in county for receipt of notices)
                                Karoline K. Radcliffe
House (including grounds on which it is located) 7218 BELMONT AVE., MAYS LANDING, NJ
                                                 (Address)                              08330

Date of Lease 5/23/12          Rent for the Term is $ 1000 PER MONTH
                               The Rent is payable in advance on the first day of each month,
Term 6 MONTHS                  as follows:

Beginning 6/1/12

Ending 11/30/12

Security $ 1,500 deposited at

Name and address of bank, savings and loan association or investment company

Broker. The Landlord and the Tenant recognize
REMAX ATLANTIC IS
DUE 5% RENT - $300
as the Broker who brought about this Lease. The
LANDLORD shall pay the Broker's commission.

Additional agreements 6 MONTH RENEWABLE LEASE

TENANT PERMITTED TO HAVE DOG

## Table of Contents

| | |
|---|---|
| 1. Possession and Use | 14. Fire and Other Casualty |
| 2. Rent | 15. Liability of Landlord and Tenant |
| 3. Additional Rent | 16. Subordination to Mortgage |
| 4. Security | 17. Tenant's Letter |
| 5. No Assignment or Subletting | 18. Notices |
| 6. Violation, Eviction and Re-entry | 19. No Waiver |
| 7. Damages | 20. Survival |
| 8. Quiet Enjoyment | 21. Renewal Lease |
| 9. Utilities and Services | 22. Furniture |
| 10. Tenant's Repairs and Maintenance | 23. End of Term |
| 11. Landlord's Repairs | 24. Binding |
| 12. Access to House | 25. Full Agreement |
| 13. No Alterations or Installation of Equipment | 26. Attorney Review |

**1. Possession and Use**

The Landlord shall give possession of the House to the Tenant for the Term. The Tenant shall take possession of and use the House only as a private residence. Only a Tenant signing this Lease and the children of that Tenant may live in the House. The Tenant shall not use the House for any business, professional, unlawful or hazardous purpose. The Tenant must not allow the House to be vacant for extended periods.

**2. Rent**

The Tenant shall pay the Rent to the Landlord at the Landlord's address.

**3. Additional Rent**

If the Tenant fails to comply with any agreement in this Lease, the Landlord may do so on behalf of the Tenant. The Landlord may charge the cost to comply to the Tenant as

*Instructions to preparer: If you are not a real estate broker or salesperson licensed by the New Jersey Real Estate Commission, you may delete this language.*

"additional rent". This includes reasonable attorney's fees incurred by the Landlord as a result of the Tenant's violation of any Lease agreement. The additional rent shall be due and payable as Rent with the next monthly Rent payment. Non-payment of additional rent gives the Landlord the same rights against the Tenant as if the Tenant failed to pay the Rent.

## 4. Security

The Tenant has given to the Landlord the Security stated above. It shall be deposited or invested by the Landlord and bear interest or yield other earnings as required by law. The balance of the interest or earnings, after deduction for the Landlord's administration expenses allowed by law, shall belong to the Tenant. The Tenant's portion of the interest or earnings shall be permitted to compound, or shall be paid to or credited for the benefit of the Tenant as provided by law.

The Security shall be held in trust by the Landlord during the Term of this Lease, including any renewal or extension. It shall be used as security for the Tenant's compliance with the Tenant's obligations under this Lease. The Landlord may deduct any costs resulting from the Tenant's failure to comply with any agreement in this Lease. If the costs exceed the Security, the Tenant shall pay the additional amount to the Landlord. If the Landlord uses any of the Security during the Term, the Tenant shall promptly restore the Security to its original amount. The Security is not to be used by the Tenant for the payment of Rent without the Landlord's written consent.

Within 30 days after the end of the Term, the Landlord shall return to the Tenant (a) the Security and the Tenant's portion of the interest or earnings, less any charges made under this Lease, and (b) a statement itemizing the interest or earnings and any deductions. This shall be done by personal delivery, registered or certified mail.

If the Landlord's interest in the Building is transferred, the Landlord shall (a) turn over the Security plus the Tenant's portion of the interest or earnings to the new Landlord and (b) notify the Tenant of the name and address of the new Landlord. Notice must be given to the Tenant within 5 days after the transfer, by registered or certified mail. The Landlord shall then no longer be liable to the Tenant for the Security plus the Tenant's portion of the interest or earnings. The new Landlord becomes liable to the Tenant for the return of the Security plus the Tenant's portion of the interest or earnings in accordance with the terms of this Lease.

## 5. No Assignment or Subletting

The Tenant may not do any of the following without the Landlord's written consent: (a) assign this Lease, (b) sublet all or any part of the House or (c) permit any other person to use the House except as a temporary guest.

## 6. Violation, Eviction and Re-entry

The Landlord reserves a right of re-entry which allows the Landlord to end this Lease and re-enter the House if the Tenant violates any agreement in this Lease. This is done by eviction. Eviction is a court procedure to remove a tenant. The Landlord may also evict the Tenant for any one of the other grounds of good cause allowed by law. Eviction is started by the filing of a complaint in court and the service of a summons on a tenant to appear in court. After obtaining a judgment for possession and compliance with the warrant of removal, the Landlord may re-enter and take back possession of the House. If the cause for eviction is non-payment of rent, notice does not have to be given to the Tenant before the Landlord files a complaint. If there is any other cause to evict, the Landlord must give to the Tenant the notice required by law before the Landlord files a complaint for eviction.

## 7. Damages

The Tenant is liable for all damages caused by the Tenant's violation of any agreement in this Lease. This includes reasonable attorney's fees and costs.

After eviction the Tenant shall pay the unpaid Rent for the Term or until the Landlord re-rents the House, if sooner. If the Landlord re-rents the House for less than the Tenant's

Rent, the Tenant must pay the difference until the end of the Term. If the Landlord re-rents the House for more than the Tenant's Rent, the Tenant is not entitled to the excess. The Tenant shall also pay (a) all reasonable expenses incurred by the Landlord in preparing the House for re-renting and (b) commissions paid to a broker for finding a new tenant.

## 8. Quiet Enjoyment

The Landlord has the right to enter into this Lease. If the Tenant complies with this Lease, the Landlord must provide the Tenant with undisturbed possession of the House.

## 9. Utilities and Services

The Tenant shall arrange and pay for all utilities and services furnished to the House; including the following:

(a) Heat                    (c) Electric
(b) Hot and cold water      (d) Gas

The Landlord is not liable for any inconvenience or harm caused by any stoppage or reduction of services beyond the Landlord's control. This does not excuse the Tenant from paying Rent or the Landlord from promptly taking corrective action.

## 10. Tenant's Repairs and Maintenance

The Tenant shall:

(a) Pay for all repairs, replacements and damages caused by the act or neglect of the Tenant, the Tenant's family and domestic employees.

(b) Keep and maintain the House and grounds in a neat, clean, safe and sanitary condition. Vehicles may be driven or parked only in the driveway or in the garage. The Tenant shall not allow injury to the landscaping.

(c) Take good care of the House and all equipment and fixtures in it.

(d) Keep the furnace clean.

(e) Keep the walks and driveway free from dirt, garbage, snow, and ice.

(f) Keep nothing in the House which is inflammable, dangerous or might increase the danger of fire or other casualty.

(g) Promptly notify the Landlord when there are conditions which need repair.

(h) Promptly remove from the House all garbage and debris and take to the curb for collection.

(i) Use all electric, plumbing and other facilities safely.

(j) Do nothing to cause a cancellation or an increase in the cost of Landlord's fire or liability insurance.

(k) Use no more electricity than the wiring or feeders to the House can safely carry.

(l) Obey any written instructions of the Landlord for the care and use of appliances, equipment, and other personal property in the House.

(m) Do nothing to destroy, deface, damage, or remove any part of the House.

(n) Do nothing to destroy the peace and quiet of the Landlord, other tenants or persons in the neighborhood.

(o) Promptly comply with all orders and rules of the Board of Health or other authorities governing the House which are directed to the Tenant.

## 11. Landlord's Repairs

The Landlord shall make any necessary repairs and replacements to the vital facilities serving the House within a reasonable time after notice by the Tenant.

## 12. Access to House

The Landlord shall have access to the House on reasonable notice to the Tenant to (a) inspect the House, (b) make necessary repairs, alterations, or improvements, (c) supply services, and (d) show it to possible buyers, mortgage lenders, contractors and insurers.

The Landlord may show the House to rental applicants at reasonable hours on notice to the Tenant within 3 months before the end of the Term.

The Landlord may enter the House at any time without notice to the Tenant in case of emergency.

## 13. No Alterations or Installation of Equipment

The Tenant may not make any changes or additions to the House without the Landlord's written consent. This rule includes but is not limited to:

(a) Installation of panelling, flooring, built-in decorations, partitions, moldings, or any other fixture drilled into or attached to the floors, walls, or ceilings.

(b) Installation of any locks or chain-guards.

(c) Painting, wallpapering, or other decorations.

(d) Installation of any equipment or wiring.

(e) Change in the plumbing, cooking, air conditioning, electrical or heating systems.

All changes or additions made without the Landlord's written consent shall be removed by the Tenant on demand.

All changes or additions made with the Landlord's written consent shall become the property of the Landlord when completed and paid for by the Tenant. They shall remain as part of the House at the end of the Term unless the Landlord demands that the Tenant remove them. The Tenant shall promptly pay all costs of any permitted changes and additions. The Tenant shall not allow any mechanic's lien or other claim to be filed against the House. If any lien or claim is filed against the House, the Tenant shall have it promptly removed.

## 14. Fire and Other Casualty

The Tenant shall notify the Landlord at once of any fire or other casualty in the House. The Tenant is not required to pay Rent when the House is unusable. If the Tenant uses part of the House for living purposes, the Tenant must pay Rent pro-rata for the usable part.

If the House is partially damaged by fire or other casualty the Landlord shall repair it within a reasonable time. This includes the damage to the House and fixtures installed by the Landlord. The Landlord need not repair or replace anything installed by the Tenant.

Either party may cancel this lease if the House is so damaged by fire or other casualty that it cannot be repaired within 90 days. If the parties cannot agree, the opinion of a contractor chosen by the Landlord and the Tenant will be binding on both parties.

This Lease shall end if the House is totally destroyed. The Tenant shall pay Rent to the date of destruction.

If the fire or other casualty is caused by the act or neglect of the Tenant, the Tenant's family or domestic employees, the Tenant shall pay for all repairs and all other damages.

## 15. Liability of Landlord and Tenant

The Landlord is not liable for loss, injury, or damage to any person or property unless it is due to the Landlord's act or neglect. The Tenant is liable for any loss, injury or damage to any person or property caused by the act or neglect of the Tenant, the Tenant's family or domestic employees.

## 16. Subordination to Mortgage

This Lease and all renewals of this Lease shall be subordinate to all present and future mortgages on the House and grounds. In a sale of the House and grounds arising out of a court proceeding known as foreclosure, the holder of a mortgage on the House and grounds may end this Lease. The Tenant shall sign all papers needed to subordinate this Lease to any mortgage on the House and grounds. If the Tenant refuses, the Landlord may sign the papers on behalf of the Tenant.

## 17. Tenant's Letter

At the request of the Landlord, the Tenant shall sign a letter stating that (a) this Lease has not been amended and is in effect, (b) the Landlord has fully performed all of the Landlord's agreements in this Lease, (c) the Tenant has no rights to the House, except as stated in this Lease, (d) the Tenant has paid all Rent to date, and (e) the Tenant has not paid Rent for more than 1 month in advance. The letter shall also list all the property attached to the House which is owned by the Tenant.

## 18. Notices

All notices given under this Lease must be in writing. Each party must accept and claim the notices given by the other. Unless otherwise required by law, they may be given by (a) personal delivery, or (b) certified mail, return receipt requested. Notices shall be addressed to the Landlord at the address written at the beginning of this Lease and to the Tenant at the House.

## 19. No Waiver

The Landlord's failure to enforce any agreement in this Lease shall not prevent the Landlord from enforcing the agreement for any violation occurring at a later time.

## 20. Survival

If any agreement in this Lease is contrary to law, the rest of the Lease shall remain in effect.

## 21. Renewal Lease

The Landlord must offer the Tenant a renewal lease to take effect at the end of the Term unless the Landlord has good cause as defined by law. The renewal lease may contain reasonable changes, including any change in the Term. If the Landlord must offer a renewal lease, the Landlord shall notify the Tenant of the renewal lease at least 120 days before the end of the Term unless the tenancy is month to month. The Tenant must notify the Landlord of the Tenant's acceptance or rejection of the renewal lease at least 90 days before the end of the Term. If the Tenant fails to notify the Landlord of the Tenant's acceptance, it will be considered a rejection. If the Tenant does not accept the renewal lease, the Tenant must vacate the House at the end of the Term.

## 22. Furniture

If the House is leased in furnished condition, the Tenant shall maintain the furniture and furnishings in good order and repair. A list of the furniture and furnishings is attached to this Lease as "Rider A". The Tenant's signature on Rider A means that the list is accepted as correct and all items are in good condition.

## 23. End of Term

At the end of the Term the Tenant shall (a) leave the House clean, (b) remove all of the Tenant's property, (c) repair all damage including that caused by moving, and (d) vacate the House and return it with all keys to the Landlord in the same condition as it was at the beginning of the Term, except for normal wear and tear.

If the Tenant leaves any property in the House, the Landlord may (a) dispose of it and charge the Tenant for the cost of disposal, or (b) keep it as abandoned property.

**24. Binding**

This Lease is binding on the Landlord and the Tenant and all parties who lawfully succeed to their rights or take their places.

**25. Full Agreement**

The parties have read this Lease. It contains their full agreement. It may not be changed except in writing signed by the Landlord and the Tenant.

**26. Attorney Review**

1. *Study by Attorney.* The Tenant or the Landlord may choose to have an attorney study this lease. If an attorney is consulted, the attorney must complete his or her review of the lease within a three-day period. This lease will be legally binding at the end of this three-day period unless an attorney for the Tenant or the Landlord reviews and disapproves of the lease.

2. *Counting the Time.* You count the three days from the date of delivery of the signed lease to the Tenant and the Landlord. You do not count Saturdays, Sundays or legal holidays. The Tenant and the Landlord may agree in writing to extend the three-day period for attorney review.

3. *Notice of Disapproval.* If an attorney for the Tenant or the Landlord reviews and disapproves of this lease, the attorney must notify the Broker(s) and the other party named in this lease within the three-day period. Otherwise this lease will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney may also, but need not, inform the Broker(s) of any suggested revision(s) in the lease that would make it satisfactory.

**27.   Consumer Information Statement Acknowledgement:**

By signing below, the Landlords and Tenants acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the brokerage firms involved in this transaction prior to the first showing of the property.

Declaration of Licensee Business Relationship(s):

(1)  I, _Gregory Laubert_ (name of licensee), as an authorized representative of Re/Max Atlantic, am working in this transaction as (Choose One):  Landlord's Agent Only ____;  Tenant's Agent Only _X_; Disclosed Dual Agent _____;  or Transaction Broker _____.

(2)  Information supplied by _Prudential Fox + Roach - 14C_ (name of other firm) has indicated that it is operating in this transaction as a (Choose One):  Landlord's Agent Only _X_;  Tenants Agent Only ____;  Disclosed Dual Agent _____;  or Transaction Broker _____.

**Signatures**

The Landlord and the Tenant agree to the terms of this Lease by signing below. If a party is a corporation, this Lease is signed by its proper corporate officers and its corporate seal is affixed.

Witnessed or attested by:

_____   _____ (SEAL)
                                                                Landlord

                                    _____ (SEAL)
                                                                Landlord

_____
As to Landlord

                                    _William H. Johnson Jr._____ (SEAL)
                                                                Tenant

_____  5/23/12  _Gloria M. Radcliffe_____ (SEAL)
As to Tenant                                                    Tenant

*Instructions to preparer: If you are not a real estate broker or salesperson licensed by the New Jersey Real Estate Commission, you may delete this language.*

# CONSUMER INFORMATION STATEMENT
# on NEW JERSEY REAL ESTATE RELATIONSHIPS
# with ACKNOWLEDGMENTS

## Consumer Information Statement on New Jersey Real Estate Relationships

In New Jersey, real estate licensees are required to disclose how they intend to work with buyers and sellers in a real estate transaction (In rental transactions, the terms "buyers" and "sellers" should be read as "tenants" and "landlords," respectively).

1. AS A SELLER'S AGENT OR SUBAGENT, I, AS A LICENSEE, REPRESENT THE SELLER AND ALL MATERIAL INFORMATION SUPPLIED TO ME BY THE BUYER WILL BE TOLD TO THE SELLER.

2. AS A BUYER'S AGENT, I, AS A LICENSEE, REPRESENT THE BUYER AND ALL MATERIAL INFORMATION SUPPLIED TO ME BY THE SELLER WILL BE TOLD TO THE BUYER.

3. AS A DISCLOSED DUAL AGENT, I, AS A LICENSEE, REPRESENT BOTH PARTIES, HOWEVER, I MAY NOT, WITHOUT EXPRESS PER-MISSION, DISCLOSE THAT THE SELLER WILL ACCEPT A PRICE LESS THAN THE LISTING PRICE OR THAT THE BUYER WILL PAY A PRICE GREATER THAN THE OFFERED PRICE.

4. AS A TRANSACTION BROKER, I, AS A LICENSEE, DO NOT REPRESENT EITHER THE BUYER OR THE SELLER. ALL INFORMATION I ACQUIRE FROM ONE PARTY MAY BE TOLD TO THE OTHER PARTY.

Before you disclose confidential information to a real estate licensee regarding a real estate transaction, you should understand what type of business relationship you have with that licensee. There are four business relationships: (1) seller's agent; (2) buyer's agent; (3) disclosed dual agent; and (4) transaction broker. Each of these relationships impose certain legal duties and responsibilities on the licensee as well as on the seller or buyer repre-sented. These four relationships are defined in greater detail herein. Please read carefully before making your choice.

## SELLER'S AGENT

A seller's agent WORKS ONLY FOR THE SELLER and has legal obligations, called *fiduciary duties*, to the seller. These include reasonable care, undivided loyalty, confidentiality and full disclosure. Seller's agents often work with buyers, but do not represent the buyers. However, in working with buyers a seller's agent must act honestly. In dealing with both parties, a seller's agent may not make any misrepresentations to either party on matters material to the transaction, such as the buyer's financial ability to pay, and must disclose defects of a material nature affecting the physical condition of the property which a reasonable inspection by the licensee would disclose.

Seller's agents include all persons licensed with the brokerage firm which has been authorized through a listing agreement to work as the seller's agent. In addition, other brokerage firms may accept an offer to work with the listing broker's firm as the seller's agents. In such cases, those firms and all persons licensed with such firms, are called "sub-agents." Sellers who do not desire to have their property marketed through sub-agents should so inform the seller's agent.

## BUYER'S AGENT

A buyer's agent WORKS ONLY FOR THE BUYER. A buyer's agent has fiduciary duties to the buyer which include reasonable care, undivided loyalty, confidentiality and full disclosure. However, in dealing with sellers, a buyer's agent must act honestly. In dealing with both parties, a buyer's agent may not make any misrepresentations to either party on matters material to the transaction, such as the buyer's financial ability to pay, and must disclose defects of a material nature affecting the physical condition of the property which a reasonable inspection by the licensee would disclose.

A buyer wishing to be represented by a buyer's agent is advised to enter into a separate written buyer agency contract with the brokerage firm which is to work as their agent.

## DISCLOSED DUAL AGENT

A disclosed dual agent WORKS FOR BOTH THE BUYER AND SELLER. To work as a dual agent, a firm must first obtain the informed written consent of the buyer and the seller. Therefore, before acting as a disclosed dual agent, brokerage firms must make written disclosure to both parties. Disclosed dual agency is most likely to occur when a licensee with a real estate firm working as a buyer's agent shows the buyer properties owned by sellers for whom that firm is also working as a seller's agent or sub-agent.

A real estate licensee working as a disclosed dual agent must carefully explain to each party that, in addition to working as their agent, their firm will also work as the agent for the other party. They must also explain what effect their working as a disclosed dual agent will have on the fiduciary duties their firm owes to the buyer and to the seller. When working as a disclosed dual agent, a brokerage firm must have the express permission of a party prior to disclosing confidential information to the other party. Such information includes the highest price a buyer can afford to pay and the lowest price a seller will accept and the parties' motivation to buy or sell. Remember, a brokerage firm acting as a disclosed dual agent will not be able to put one party's interests ahead of those of the other party and cannot advise or counsel either party on how to gain an advantage at the expense of the other party on the basis of confidential information obtained from or about the other party.

If you decide to enter into an agency relationship with a firm which is to work as a disclosed dual agent, you are advised to sign a written agreement with that firm.

## TRANSACTION BROKER

The New Jersey Real Estate Licensing Law does not require licensees to work in the capacity of an "agent" when providing brokerage services. A transaction broker works with a buyer or seller or both in the sales transaction without representing anyone. A TRANSACTION BROKER DOES NOT PROMOTE THE INTERESTS OF ONE PARTY OVER THOSE OF THE OTHER PARTY TO THE TRANSACTION. Licensees with such a firm would be required to treat all parties honestly and to act in a competent manner, but they would not be required to keep confidential any information. A transaction broker can locate qualified buyers for a seller or suitable properties for a buyer. They can then work with both parties in an effort to arrive at an agreement on the sale or rental of real estate and perform tasks to facilitate the closing of a transaction.

A transaction broker primarily serves as a manager of the transaction, communicating information between the parties to assist them in arriving at a mutually acceptable agreement and in closing the transaction, but cannot advise or counsel either party on how to gain an advantage at the expense of the other party. Owners considering working with transaction brokers are advised to sign a written agreement with that firm which clearly states what services that firm will perform and how it will be paid. In addition, any transaction brokerage agreement with a seller or landlord should specifically state whether a notice on the property to be rented or sold will or will not be circulated in any or all Multiple Listing System(s) of which that firm is a member.

**YOU MAY OBTAIN LEGAL ADVICE ABOUT THESE BUSINESS RELATIONSHIPS FROM YOUR OWN LAWYER. THIS STATEMENT IS NOT A CONTRACT AND IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.**

THE NEW JERSEY REAL ESTATE COMMISSION, CN 328, TRENTON, NJ 08625-0328. GLORIA A. DECKER, Executive Director

### ACKNOWLEDGMENT OF RECEIPT OF CONSUMER INFORMATION STATEMENT (CIS)

**FOR SELLER AND LANDLORDS**

"By signing this Consumer Information Statement, I acknowledge that I received this Statement from _____
(name of brokerage firm) prior to discussing my motivation to sell or lease or my desired selling or leasing price with one of its representatives."

Signed _____

**FOR BUYERS AND TENANTS**

"By signing this Consumer Information Statement, I acknowledge that I received this Statement from *REMAX  ATLANTIC*
(name of brokerage firm) prior to discussing my motivation or financial ability to buy or lease with one of its representatives."

Signed X *William H. Simons Jr.*  X *Melissa A. Radcliffe*

**DECLARATION OF BUSINESS RELATIONSHIP**

I, (name of licensee) *GREGORY  LAMBERT* , as an authorized representative of *REMAX  ATLANTIC* (name of brokerage firm) intend, as of this time, to work with you as: (indicate one of the following)

○ Seller's agent only
○ Landlord's agent only
○ Seller's agent and disclosed dual agent if the opportunity arises
○ Landlord's agent and disclosed dual agent if the opportunity arises
○ Transaction broker only

○ Buyer's agent only
✗ Tenant's agent only
○ Buyer's agent and disclosed dual agent if the opportunity arises
○ Tenant's agent and disclosed dual agent if the opportunity arises
○ Seller's agent on properties on which this firm is acting as the seller's agent and transaction broker on other properties.

A-6/98                                                DATE: _____